IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TEKEDRA CHENISE GIBBS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:25-CV-3022-D |
| | § | |
| KIPP TEXAS PUBLIC SCHOOLS, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this employment dispute, defendant Kipp Texas Public Schools ("Kipp") moves under Fed. R. Civ. P. 12(b)(6) to dismiss *pro se* plaintiff Tekedra Chenise Gibbs's ("Gibbs's") third amended complaint. For the reasons that follow, the court grants Kipp's motion in part and denies it in part and grants Gibbs leave to replead.

I

Kipp employed Gibbs, an African American who is over the age of 40, for more than one year before it terminated her employment on May 29, 2024.[1] At the time of her termination, Gibbs held the position of Director of Teacher Development. In January 2024 Gibbs was included in work related to the Teacher Incentive Allotment ("TIA") and received

[1]In deciding Kipp's motion, the court construes the third amended complaint in the light most favorable to Gibbs, accepts all well-pleaded factual allegations, and draws all reasonable inferences in her favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

TIA-related training via webinars and in person until February 23, 2024. Gibbs alleges that, on February 18, 2024, she submitted a "written report to management raising concerns about unfair and unjust treatment." 3d Am. Compl. ¶ 102. She also asserts that she contacted senior leadership on March 24, 2024 "to seek assistance regarding workplace concerns," *id.*, and that the following day, Kipp issued Gibbs a formal warning based on alleged performance deficiencies.

In early April 2024 Gibbs experienced a serious health condition that required continuing medical treatment. She requested time off on April 8 and 9 due to her medical condition, but Kipp denied the request and continued to assign work to her. Gibbs filed "Grievance # 1" on April 10, raising "concerns regarding compensation disparity." *Id.* ¶¶ 58, 116. She later sought medical treatment, and her physician determined that medical leave was necessary. On April 17, 2024 Kipp approved Gibbs's request for leave under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and retroactively designated her leave from April 10 through April 18, 2024. This retroactive designation occurred after Gibbs had already been required to work during periods when she was experiencing medical symptoms and had requested time off.

Gibbs filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 12, 2024.[2] Her EEOC charge alleges race, age, and sex

[2]Gibbs alleges that she filed the EEOC charge on May 3, 2024, but the EEOC charge that she has attached to her response to Kipp's motion is dated April 12, 2024, and Gibbs does not allege that she filed more than one charge.

discrimination and retaliation. On May 6, 2024 Gibbs filed "Grievance #2." *Id.* at 60. Kipp issued a Final Written Warning within approximately one hour of Gibbs's grievance conference.

On May 23, 2024 Gibbs requested intermittent FMLA leave, which her health care provider had determined was medically necessary. Kipp terminated Gibbs's employment on May 29, 2024, one day after she submitted the employee portion of the intermittent FMLA paperwork. This lawsuit followed.

In her third amended complaint, which is the operative pleading, Gibbs alleges claims for interference with rights under the FMLA; retaliation under the FMLA and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.; race discrimination under Title VII; and age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*.

Kipp now moves to dismiss Gibbs's third amended complaint. Gibbs opposes the motion, which the court is deciding on the briefs, without oral argument.

## II

### A

*Pro se* complaints are to be liberally construed. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Hernandez v. Maxwell*, 905 F.2d 94, 96 (5th Cir. 1990). And they are to be held to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines*, 404 U.S. at 520. Nevertheless, "[a]lthough pro se pleadings are to be liberally construed, they must state a 'plausible claim for relief to survive [] a motion to

dismiss.'" *Little v. Tex. Att'y Gen.*, 2015 WL 5613321, at *2 (N.D. Tex. Sept. 24, 2015) (Fitzwater, J.) (alteration in original) (quoting *Scott v. Cohen*, 528 Fed. Appx. 150, 152 (3d Cir. 2013) (per curiam)), *aff'd sub nom. Little v. Obryan*, 655 Fed. Appx. 1027 (5th Cir. 2016).

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [plaintiff's third amended] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (brackets omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id*. at 678.

B

Failure to exhaust administrative remedies is an affirmative defense. *See, e.g.*, *Clemmer v. Irving Indep. Sch. Dist*., 2015 WL 1757358, at *3 (N.D. Tex. Apr. 17, 2015) (Fitzwater, J.) (Title VII exhaustion is an affirmative defense), *aff'd sub nom. Chen v. Irving Indep. Sch. Dist*., 689 Fed. Appx. 379 (5th Cir. 2017).[3] To obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the "successful affirmative defense [must] appear[] clearly on the face of the pleadings." *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)). In other words, the movant is not entitled to dismissal under Rule 12(b)(6) based on the affirmative defense unless the nonmovant has "pleaded [herself] out of court by admitting to all of the elements of the defense." *Cochran v. Astrue*, 2011 WL 5604024, at *1 (N.D. Tex. Nov. 17, 2011) (Fitzwater, C.J.) (quoting *Sivertson*, 2011 WL 4100958, at *3).

III

Kipp moves to dismiss Gibbs's claims under Title VII and the ADEA on the ground that she failed to exhaust her administrative remedies with respect to these claims.

---

[3]The Supreme Court held in *Fort Bend County, Texas v. Davis*, 587 U.S. 541 (2019), that the exhaustion requirement of Title VII is a mandatory procedural rule, "not a jurisdictional prescription delineating the adjudicatory authority of courts," resolving a conflict among the courts of appeals over whether Title VII's charge-filing requirement is jurisdictional. *Id*. at 551.

A

A claimant seeking relief under Title VII or the ADEA must file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory event. *See* 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d)(1)(A) (ADEA). If she does not, her claim is barred from federal court, regardless of merit. *See Noack v. YMCA of the Greater Hous. Area*, 418 Fed. Appx. 347, 351 (5th Cir. 2011) (per curiam); *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009). A plaintiff "may not base a Title VII [or ADEA] claim on an action that was not previously asserted in a formal charge of discrimination to the EEOC, or that could not 'reasonably be expected to grow out of the charge of discrimination.'" *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006)). A claim only grows out of the charge if it "placed the employer on notice of the claims against [it]." *Haferbier v. IMER USA, Inc.*, 2024 WL 3094616, at *3 (N.D. Tex. June 20, 2024) (Pittman, J.) (citing *Manning v. Chevron Chem Co., LLC*, 332 F.3d 874, 879 (5th Cir. 2003)).

B

Kipp contends that Gibbs's EEOC charge only addresses events that occurred *prior to* April 12, 2024, and that her Title VII claim based on her grievances, final warning in May 2024, and termination must be dismissed for failure to exhaust administrative remedies. The court agrees that, to the extent Gibbs bases her Title VII and ADEA discrimination claims on conduct that post-dates her EEOC charge, Gibbs has not exhausted her administrative remedies.

In her EEOC charge, Gibbs checked the boxes for age and race discrimination. But the only allegation in the charge that even mentions age or race is the following statement: "I have recently learned that this department (Talent Management) and possibly other departments are known for not accommodating black females over 40." P. App. (ECF No. 31-6) at 4. Gibbs does not allege that *she* was subjected to discrimination based on her race or age, and nothing in the charge would have placed Kipp on notice that the EEOC investigation could reasonably grow to include age or race discrimination claims based on the Final Written Warning or Gibbs's termination, both of which post-date the EEOC charge itself. *See, e.g.*, *Bates v. Caliber Holdings LLC*, 2026 WL 1590614, at *9 (N.D. Tex. June 3, 2026) (Horan, J.) ("[M]erely checking the box for retaliation, for instance, on the EEOC charge is not sufficient if the plaintiff fails to allege any facts concerning retaliation that would have put the EEOC on notice about the possibility of a retaliation claim." (citation omitted)); *see also Givs v. City of Eunice*, 512 F.Supp.2d 522, 536-37 (W.D. La. 2007) ("Even though plaintiff checked both the race and retaliation boxes on the EEOC complaint, the Court does not accept that merely checking the retaliation box is sufficient to exhaust his administrative remedies. Plaintiff's failure to allege *any facts* concerning retaliation or harassment that would have put the EEOC on notice about the possibility of such, are fatal to these claims."), *aff'd*, 268 Fed. Appx. 305 (5th Cir. 2008).

Accordingly, the court dismisses Gibbs's Title VII and ADEA discrimination claims

to the extent that they are based on the Final Written Warning or Gibbs's termination.[4]

C

The court denies Kipp's motion to dismiss Gibbs's Title VII retaliation claim[5] on the ground that Gibbs failed to exhaust her administrative remedies. On her EEOC charge, Gibbs checked the boxes for race, sex, and age discrimination and retaliation. P. App. (ECF No. 31-6) at 1. She alleges in the charge that, after she met with her Managing Director to discuss "how [she] had been treated unfairly from December 2023 through February 2024," *id.*, she received a formal warning for her job performance, and that three of the "failed tasks," i.e., tasks that had been flagged as incorrect, "are directly related to the individual who [she] initially reported as being unfair and unjust," *id.* at 4. The court holds that, "construed liberally," the combination of checked boxes and allegations regarding the formal warning is sufficient to place Kipp on notice that a Title VII retaliation claim could grow out of Gibbs's EEOC charge. *Pacheco*, 448 F.3d at 788.

Moreover, under *Gupta v. East Texas State University*, 654 F.2d 411, 414 (5th Cir.

---

[4]Because Kipp has not moved to dismiss Gibbs's Title VII or ADEA claims based on conduct that pre-dates the April 12, 2024 EEOC charge, and because the court is dismissing these claims on other grounds, the court does not address whether Gibbs has properly exhausted her Title VII or ADEA claims based on pre-April 12, 2024 conduct.

[5]Gibbs also brings a claim for retaliation under the FMLA, but, unlike Title VII and the ADEA, the FMLA does not require employees to exhaust administrative remedies before filing suit in federal court. *Nuñez-Renck v. Int'l Bus. Machines Corp. (IBM)*, 2023 WL 5986463, at *4 (N.D. Tex. Sept. 14, 2023) (Fitzwater, J.)

Unit A Aug. 1981), which appears to still be good law in the Fifth Circuit,[6] "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." *Id.*; *see also Land v. Inmar Rx Sols., Inc.*, 2026 WL 2330051, at *6 (N.D. Tex. July 17, 2026) (Horan, J.) ("Retaliation that occurs as a result of filing an EEOC charge can be included in a Title VII case in district court without filing a new charge." (citing *Gupta*, 654 F.2d at 414)), *rec adopted*, 2026 WL 2329700 (N.D. Tex. Aug. 11, 2026) (Boyle, J.). In other words, to the extent that Gibbs alleges that she was terminated in retaliation for filing the EEOC charge, she has likely sufficiently exhausted her administrative remedies, even though her termination post-dates the charge.[7]

Accordingly, the court declines on the present briefing (which does not address *Gupta*

---

[6]While some courts have considered whether *Gupta* is still good law, "[u]ntil the Supreme Court or Fifth Circuit reassess the holding of *Gupta*, this court is bound to follow it." *Smith v. Dall. Cnty. Hosp. Dist.*, 2014 WL 645248, at *4 (N.D. Tex. Jan. 29, 2014) (Horan, J.)(citation omitted), *rec. adopted*, 2014 WL 645248, at *1 (N.D. Tex. Feb. 19, 2014) (Fish, J.); *see also Morgan v. Bray*, 2025 WL 752545, at *3 n.13 (5th Cir. 2025) (per curiam) (citing, and not disturbing, *Gupta*).

[7]There is Fifth Circuit authority holding that "the *Gupta* exception only applies when the new claim is one of retaliation; *Gupta* does not apply to cases in which both retaliation and discrimination claims are alleged." *Phillips v. Caris Life Scis., Inc.*, 715 Fed. Appx. 365, 370 (5th Cir. 2017) (per curiam) (citing cases). Because Kipp does not argue that Gibbs's discrimination claims preclude her from relying on the *Gupta* exception, the court does not address whether the presence of these claims precludes her from relying on *Gupta* to establish that she has exhausted her administrative remedies with respect to her termination-based retaliation claim.

or the allegations of retaliation within the EEOC charge itself) to dismiss Gibbs's Title VII retaliation claim on the ground that she has not exhausted her administrative remedies.

IV

Kipp moves to dismiss Gibbs's claims for race discrimination under Title VII and age discrimination under the ADEA.

A

Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). When a plaintiff alleges a Title VII claim of race discrimination based on circumstantial evidence, as Gibbs does, the court can use the *McDonnell Douglas*[8] framework as a reference when determining whether the plaintiff has plausibly alleged the ultimate elements of her claim.[9] Under this framework, a plaintiff must

[8]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[9]The familiar *McDonnell Douglas* standard for evaluating employment discrimination claims is an evidentiary framework, not a pleading standard. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Accordingly, "a plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz*, 534 U.S. at 510-12); *see also, e.g.*, *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) ("Although Chhim did not have to submit evidence to establish a prima facie case of discrimination at this stage, he had to plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible."). To survive Kipp's motion to dismiss, however, Gibbs must plausibly plead the ultimate elements of her discrimination claim. *See Chhim*, 836 F.3d at 470. And since *McDonnell Douglas* will govern when a plaintiff relies on indirect evidence of discrimination, it can be helpful to reference that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of her claim. *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (Title VII case) ("If a plaintiff's . . . claim depends on circumstantial evidence, he will 'ultimately have to show' that he can satisfy the *McDonnell Douglas*

sufficiently plead that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) others similarly situated but outside her protected class were treated more favorably. *See, e.g.*, *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997-98 (5th Cir. 2022). Under the fourth element, the plaintiff must demonstrate that she was treated less favorably than other similarly situated employees under "nearly identical circumstances." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *see Willis v. W. Power Sports, Inc.*, 2024 WL 448354, at *2 (5th Cir. Feb. 6, 2024) (per curiam) (affirming Rule 12(b)(6) dismissal where plaintiff failed to identify comparator who "under nearly identical circumstances" was treated more favorably than he was). Nearly identical circumstances exist "when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee*, 574 F.3d at 260 (footnotes omitted). Additionally, "the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id*. (citations omitted).

The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1).

---

framework. In such cases, we have said that it can be 'helpful to reference' that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the . . . claim." (citations omitted) (quoting *Chhim*, 836 F.3d at 470-71)).

Where, as here, a plaintiff alleges discrimination under the ADEA based on circumstantial evidence, the court can use the *McDonnell Douglas* framework as a helpful reference when determining whether a plaintiff has plausibly alleged the ultimate elements of her claim. *See Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023). To establish a prima facie case of age discrimination under the ADEA, "the plaintiff must establish that 'she (1) was a member of the protected class [forty years of age or older], (2) was qualified for the position at issue, (3) suffered a final, adverse employment action, and (4) was either (a) replaced by someone [outside the protected class] or (b) otherwise treated less favorably than others who were similarly situated but outside the protected class.'" *Id.* at 337 (alterations in original) (quoting *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321-22 (5th Cir. 2021)).

B

Gibbs has not plausibly pleaded that any similarly situated employee outside of her protected class was treated more favorably. In support of her discrimination claim (which encompasses her claim under Title VII and her claim under the ADEA), Gibbs alleges that [1] despite entering employment under the same title, department, and supervisor, Haley Simonton ("Simonton") received higher compensation than Gibbs at the time of hire; that Victoria Soriano ("Soriano") and Kellyn Platek ("Platek") performed project management roles within the same leadership structure but were not subject to the same level of scrutiny, discipline, or workload expectations as Gibbs; and that prior personnel, including Kelsey Lippitz ("Lippitz"), were not disciplined for "similar issues," 3d Am. Compl. ¶ 131. These conclusory allegations are insufficient to plausibly plead that Gibbs was treated less

favorably than other similarly situated employees under "nearly identical circumstances." *Lee*, 574 F.3d at 259. As a preliminary matter, Gibbs does not allege the age or race of any of the four employees whom she has identified. Nor has she plausibly alleged that she was treated less favorably under "nearly identical circumstances." *Id.* For example, she alleges that she and Simonton were hired at the same time, held the same job title, and reported to the same manager, but she does not allege that she and Simonton had the same qualifications or experience. With respect to Soriano, Platek, and Lippitz, she does not allege that they had the same job responsibilities, shared the same supervisor, or had "essentially comparable violation histories." *Id.* at 260. "Her allegations lack factual detail and are insufficient to enable the court to draw the reasonable inference that her . . . coworkers [who were not black or over the age of 40] were treated more favorably under nearly identical circumstances." *Butler v. Our Cmty. Our Kids*, 2025 WL 3650759, at *3 (N.D. Tex. Dec. 17, 2025) (Fitzwater, J.) (citing cases); *see also Willis*, 2024 WL 448354, at *2 (affirming Rule 12(b)(6) dismissal where plaintiff failed to identify comparator who "under nearly identical circumstances" was treated more favorably than he was).

Accordingly, the court grants Kipp's motion to dismiss Gibbs's claims for age and race discrimination

V

Kipp moves to dismiss Gibbs's FMLA interference claim on the ground that Gibbs has not pleaded facts demonstrating that Kipp violated the FMLA or that she was prejudiced by a violation of the FMLA.

A

The FMLA entitles an employee to take up to 12 weeks of unpaid leave per year for, *inter alia*, "the employee's own serious health condition when the condition interferes with the employee's ability to perform at work." *Coleman v. Ct. App. of Md.*, 566 U.S. 30, 34 (2012) (citing 29 U.S.C. § 2612(a)(1)). The FMLA also entitles an employee returning from leave "to be restored by the employer to the position of employment held by the employee when the leave was commenced[] or . . . to be restored to an equivalent position." *Baumeister v. AIG Glob. Inv. Corp.*, 420 Fed. Appx. 351, 354 (5th Cir. 2011) (per curiam) (alterations in original) (quoting 29 U.S.C. § 2614).

It is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). Such illegal actions include refusing to authorize FMLA leave, discouraging an employee from using leave, and changing an employee's essential job functions to preclude taking leave. 29 C.F.R. § 825.220(b). To establish an FMLA interference claim, a plaintiff must show that: (1) she was an eligible employee; (2) her employer was subject to FMLA requirements; (3) she was entitled to leave; (4) she gave proper notice of her intention to take FMLA leave; and (5) her employer denied her the FMLA benefits to which she was entitled. *Byrd v. Clay County, Tex.*, 2022 WL 3154816, at *3 (N.D. Tex. July 12, 2022) (O'Connor, J.) (citing *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017)), *aff'd*, 2023 WL 3122462 (5th Cir. Apr. 27, 2023).

B

In support of her FMLA claim, Gibbs alleges that she provided Kipp "sufficient notice of her medical condition and her need for time off beginning on or about April 3, 2024," 3d Am. Compl. ¶ 88; that Kipp denied approval of her requested time off; that on April 17, 2024 Kipp designated Gibbs's leave as protected under the FMLA and approved continuous leave retroactively from April 10 through April 18, 2024; that Gibbs "encountered continued difficulty obtaining time off for medically necessary appointments" after she returned from continuous leave, *id.* ¶ 94; that she requested intermittent FMLA leave on May 23, 2024; and that her employment was terminated on May 29, 2024 while her request for intermittent FMLA leave was pending (i.e., before medical certification was finalized).

To the extent that Gibbs bases her FMLA interference claim on her request for FMLA leave from April 10 until April 18, 2024, Gibbs does not allege that Kipp denied FMLA benefits to which she was entitled. To the contrary, she alleges that Kipp *approved* and retroactively designated her FMLA leave covering these dates. Because Gibbs admits that she received the FMLA leave that she requested, her interference claim predicated on her request for FMLA leave from April 10 through April 18 fails as a matter of law. *See Park v. Direct Energy GP, L.L.C.*, 832 Fed. Appx. 288, 294 (5th Cir. 2020) (per curiam) ("[A] plaintiff suffers no FMLA injury when she receives all the leave she requests" (quoting *De La Garza-Crooks v. AT&T*, 252 F.3d 436 (5th Cir. 2001) (per curiam))).

To the extent that Gibbs bases her FMLA interference claim on allegations that Kipp denied her requests for time off on April 3, 8, and 10, Gibbs has not plausibly alleged that

she provided Kipp with sufficient notice of her need or intent to take leave on these dates. "Even when an employee is in all respects eligible for FMLA leave, 'the employee must give [her] employer notice of [her] *intention to take leave* in order to be entitled to it.'" *Cerda v. Blue Cube Operations, L.L.C.*, 95 F.4th 996, 1002 (5th Cir. 2024) (quoting *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017)). "Although an employee need not use the phrase 'FMLA leave,' she must give notice that is sufficient to reasonably apprise her employer that her request to take time off could fall under the FMLA." *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 Fed. Appx. 312, 316 (5th Cir. 2013) (per curiam). "Calling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act." *Penneti v. L&T Tech. Servs. Ltd.*, 2023 WL 4673276, at *12 (N.D. Tex. July 20, 2023) (Brown, J.) (quoting 29 C.F.R. § 825.303(b)). In the third amended complaint, Gibbs alleges that she "notified Defendant that she was experiencing worsening medical symptoms and required time off" and that she "requested time off on April 8 and April 9, 2024 due to her medical condition." 3d Am. Compl. ¶¶ 32, 33. These allegations are insufficient, without more, to plausibly allege that Gibbs provided Kipp with sufficient notice that she "*intended to take leave* and that that leave qualified for FMLA coverage." *Cerda*, 95 F.4th at 1002.

But Gibbs also alleges that Kipp interfered with her rights under the FMLA by "terminating [her employment] while her request for protected leave was pending." 3d Am. Compl. ¶ 97. She alleges that she requested intermittent FMLA leave on May 23, 2024; that she submitted the employee portion of the intermittent FMLA paperwork on May 28, 2024;

and that Kipp terminated her employment on May 29, 2024, before medical certification was finalized and while her request for protected leave was pending. Kipp has not advanced any arguments that would support dismissal of Gibbs's FMLA interference claim based on her request for intermittent leave, and it is not obvious to the court that Gibbs has not plausibly alleged FMLA interference based on her termination. Accordingly, the court denies Kipp's motion to dismiss Gibbs's FMLA interference claim to the extent that it is predicated on her termination.

VI

The court turns next to Gibbs's FMLA and Title VII retaliation claims, both of which are analyzed under the *McDonell Douglas* burden-shifting framework.

A

To plead a plausible Title VII retaliation claim, the plaintiff "must make a prima facie showing: (1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (internal quotation marks omitted) (citation omitted).

Kipp contends that Gibbs's threadbare recitals of the word retaliation, without more, are insufficient to plead a Title VII retaliation claim; that any alleged "protected activity" that occurred *after* April 12, 2024 is not properly exhausted[10]; and that Gibbs's remaining

[10]For the reasons explained above, the court declines at the pleading stage to dismiss Gibbs's retaliation claim based on a failure to exhaust administrative remedies. *See supra*

allegations are insufficient to demonstrate a causal connection because she does not specify "*what* discrimination or retaliation she complained about in her charge, *who*[*m*] she complained to about the alleged discrimination or retaliation, or whether those who took adverse employment actions against her were aware of her complaints of alleged discrimination or retaliation," D. Br. (ECF No. 30) at 13.

An employee's burden to establish causation at the prima facie stage is not onerous. *See Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) ("[T]he 'causal link' required in prong three of the prima facie case for [Title VII] retaliation is not as stringent as the 'but for' standard."). At the prima facie stage, courts routinely hold that an employee meets her prima facie burden with proof that the protected activity was followed shortly by an adverse employment action. *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (explaining that "temporal proximity alone, when very close, can in some instances establish a *prima facie* case of retaliation" under Title VII); *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) ("Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation" under Title VII.). This "close timing" between the "protected activity and an adverse action" satisfies the "minimal" burden to show causation. *See Khanna v. Park Place Motorcars of Hous., Ltd.*, 2000 WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.).

---

§ III (C).

At the very least, Gibbs has alleged close temporal proximity between the filing of her EEOC charge[11] on April 12, 2024, the Final Written Warning on May 17, 2024. These allegations satisfy the low hurdle to plead a plausible prima facie case of retaliation.[12] Accordingly, the court denies Kipp's motion to dismiss Gibbs's Title VII retaliation claim.[13]

B

The court also denies Kipp's motion to dismiss Gibbs's FMLA retaliation claim. To plausibly plead a claim for FMLA retaliation, a plaintiff must allege that (1) she was protected under the FMLA; (2) she suffered an adverse employment action; and (3) she was treated less favorably than an employee who had not requested leave under the FMLA, or the adverse decision was made because she sought protection under the FMLA. *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006). Kipp maintains that Gibbs's FMLA retaliation claim fails because she has not pleaded facts

---

[11]*See Lewis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 134 F.4th 286, 295 (5th Cir. 2025) ("The filing of an EEOC charge constitutes protected activity.").

[12]The court suggests no view on whether Gibbs can prevail on her retaliation claim in the context of a motion for summary judgment or at trial, where a "but for" cause standard will apply. *See, e.g.*, *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."); *see also, e.g.*, *Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013) ("After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation, which the employee accomplishes by showing that the adverse action would not have occurred but for the employer's retaliatory motive." (internal quotation marks and citations omitted)).

[13]The remainder of Kipp's arguments with respect to Gibbs's Title VII retaliation claim are better addressed in the context of summary judgment, when the record is more complete.

showing a causal link between her FMLA leave and any increased scrutiny and adverse treatment, written warnings, grievances, or termination, and "her sole reliance on temporal proximity is insufficient to overcome dismissal." D. Br. (ECF No. 30) at 9.

The court concludes that Gibbs has plausibly pleaded an FMLA retaliation claim based on the close timing between her request for intermittent FMLA leave and her termination. *See Besser v. Tex. Gen. Land Off.*, 834 Fed. Appx. 876, 884 (5th Cir. 2020) (per curiam) (explaining that very close temporal proximity alone can suffice "to establish causation in a prima facie case of [FMLA] retaliation"). Gibbs alleges that her request for FMLA leave was approved on April 17, 2024; that she requested intermittent FMLA leave on May 23, 2024; that she submitted the employee portion of the intermittent FMLA paperwork on May 28, 2024; and that she was terminated on May 29, 2024, while her request for protected leave was pending. The six day period that elapsed between Gibbs's request for intermittent FMLA leave and her termination is sufficiently close to establish a causal connection. *See, e.g.*, *Allen v. Amazon*, 2026 WL 776838, at *6 (N.D. Tex. Mar. 19, 2026) (Fitzwater, J) (concluding that nine day period that elapsed between plaintiff's request for FMLA leave and his termination was "sufficiently close," and denying motion to dismiss FMLA retaliation claim); *Roth v. Canon Sols. Am., Inc.*, 2019 WL 4597583, at *9 (N.D. Tex. Sept. 23, 2019) (Rutherford, J.) (concluding that "less than one month" is "close enough temporal proximity . . . that a legal inference of a causal connection . . . arises"). Accordingly, the court denies Kipp's motion to dismiss Gibbs's FMLA retaliation claim.

VII

Although the court is in part granting Kipp's motion to dismiss and Gibbs has already amended her complaint three times, the court will grant her another opportunity to replead. "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)). Gibbs has not stated that she cannot, or is unwilling to, cure the defects that the court has identified. To the contrary, she explicitly requests leave to amend "if the Court determines that any claim requires additional factual detail." P. Br. (ECF No. 31) at 14. Moreover, plaintiffs have cured pleading defects when amending after a motion to dismiss has been granted. *See, e.g.*, *Reneker v. Offill*, 2010 WL 1541350, at *2, *7 (N.D. Tex. Apr. 19, 2010) (Fitzwater, C.J.) (concluding, after twice granting motions to dismiss, that plaintiff's second amended complaint stated claim on which relief could be granted). And in granting leave to replead, the court takes into consideration that Gibbs is proceeding *pro se*. *See, e.g.*, *Smallwood v. Bank of Am.*, 2012 WL 32654, at *5 (N.D. Tex. Jan. 6, 2012) (Fitzwater, C.J.) (granting leave to file third amended complaint because plaintiffs were appearing *pro se*).

The court therefore grants Gibbs 28 days from the date this memorandum opinion and order is filed to file a fourth amended complaint. If Gibbs repleads, Kipp may move anew

to dismiss, if it has grounds to do so.

* * *

Accordingly, for the reasons explained, the court grants in part and denies in part Kipp's motion to dismiss and grants Gibbs 28 days from the date this memorandum opinion and order is filed to file a fourth amended complaint.

**SO ORDERED**.

September 10, 2026.

SIDNEY A. FITZWATER
SENIOR JUDGE